UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
    v.                              )    Criminal Case No. 14-153 (RBW)
                                    )
EDWARD DACY,                        )
                                    )
        Defendant.                  )
_____)

## MEMORANDUM OPINION

On March 25, 2015, a jury found the defendant, Edward Dacy, guilty of (1) conspiracy to commit bank, mail, and wire fraud ("Count One"), see Verdict Form at 1; (2) five counts of bank fraud ("Counts Two through Six"), see id. at 1–3; and (3) four counts of mail fraud affecting a financial institution ("Counts Sixteen through Nineteen"), see id. at 6. Thereafter, the Court sentenced the defendant to a sixty-month term of incarceration for Count One and a seventy-two-month term of incarceration as to each of Counts Two through Six and Counts Sixteen through Nineteen, to run concurrent with each other. See Judgment in a Criminal Case ("Judgment") at 3. On April 25, 2017, the defendant's conviction was affirmed by the District of Columbia Circuit. See Judgment, United States v. Dacy, No. 15-3052 (D.C. Cir. Apr. 25, 2017). Currently pending before the Court are (1) the defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Def.'s § 2255 Mot."), in which the defendant claims that he was provided ineffective assistance of counsel, see Def.'s § 2255 Mot., Exhibit ("Ex.") A (Defendant's Memorandum in Support of His § 2255 Motion ("Def.'s Mem.")) at 2–5; (2) the defendant's Motion to Appoint [a] Public Defender (the "defendant's motion to appoint counsel"); (3) the defendant's requests for the appointment of counsel, the reversal of his conviction, and a judgment of acquittal, see Letter filed October 12, 2018 (the

"first set of requests"); (4) the defendant's requests to vacate, set aside, and correct his sentence and to enjoin the United States Department of Justice and the Federal Bureau of Prisons from enforcing his sentence, see Letter filed February 23, 2020 (the "second set of requests"); and (5) the defendant's requests for a judgment of acquittal, the reversal of his convictions, the appointment of counsel, and an evidentiary hearing, see Letter filed July 23, 2020 (the "third set of requests"). Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must deny the defendant's § 2255 motion, his motion to appoint counsel, and his first, second, and third set of requests.[2]

## I.   BACKGROUND

On July 17, 2014, the defendant was indicted on one count of conspiracy, five counts of bank fraud, nine counts of wire fraud, and four counts of mail fraud. See Indictment at 1, 19–22, 24. He pleaded not guilty on August 8, 2014, see Minute Entry (Aug. 8, 2014), and on March 11, 2015, trial commenced in this case, see Minute Entry (Mar. 11, 2015).

During trial, the government presented evidence showing that the defendant worked for U.S. Titles, Inc. ("U.S. Titles"), see Trial Tr. 1:12, 1096:1–20, and that during his employment, the defendant worked with Frank Davis, a real estate investor, and Frederick Robinson, Sr., a contractor, to purchase, renovate, and sell properties, to defraud mortgage lenders through false loan applications associated with these purchases, see id. 320:7–321:13, 769:15–771:11. According to the testimony presented at trial, the defendant, Davis, and Robinson listed straw

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Opposition to Defendant's Pro Se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Gov't Opp'n"); (2) the defendant's Reply to the Government's Answer to his § 2255 Motion ("Def.'s Reply"); and (3) Defendant's Supplemental Response to the Opposition to Defendant's Pro Se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.

[2] In his first, second, and third set of requests, the defendant does not raise any new bases for appointing counsel or vacating his sentence that he already has not raised § 2255 motion and his motion to appoint counsel. Therefore, the Court will deny his first, second, and third set of requests.

buyers' names and credit profiles on settlement documents, including HUD-1 documents, as the borrower, despite the fact that the straw buyer would never occupy, own, or pay for the property, see Trial Tr. 180:24–181:14, 769:15–771:11, 938:23–939:11, and that the defendant executed the scheme by signing the HUD-1 documents on behalf of U.S. Titles, see Trial Tr. 160:2–3, 195:7, 324:23–325:25, 339:4–340:7, 563:11–23; see also Gov't's Ex. 1, 4, 6–9, 11–13, 15, 18, 73–78, 80–81, 85, 105–108. According to the evidence, the defendant knew that he was involved in a larger scale scheme when he created and signed the HUD-1 forms and when he was involved with the disbursement of the funds that were part of the real estate transactions involved in the scheme. See Trial Tr. 563:9–25, 1026:17–1027:8, 1028:16–1029:6.

After a six-day trial, the jury found the defendant guilty of ten counts of the indictment: Count One, Counts Two through Six, and Counts Sixteen through Nineteen, see Judgment at 1–2, and the Court sentenced the defendant to a total of seventy-two months of incarceration, see id. After sentencing, the defendant appealed his conviction and sentence, and the Circuit affirmed. See Judgment at 2–5, United States v. Dacy, No. 15-3052 (D.C. Cir. Apr. 25, 2017). Thereafter, the defendant filed his § 2255 motion, his motion to appoint counsel, and his first, second, and third set of requests, which are the subjects of this Memorandum Opinion.

## II.   STANDARDS OF REVIEW

### A.   28 U.S.C. § 2255 Motion

28 U.S.C. § 2255 permits a person in custody to "move the court which imposed the sentence to vacate, set aside[,] or correct the sentence" on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a) (2018). If the reviewing court finds that any of these grounds exist, it "shall vacate and set the judgment aside and shall discharge the prisoner or

resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. § 2255(b).

**B.     Motion to Appoint Counsel**

Although "[t]here is no constitutional right to appointment of counsel in habeas corpus proceedings[,] . . . representation may be provided [under the Criminal Justice Act, 18 U.S.C. § 3006A (2018),] 'for any financially eligible person who . . . is seeking relief under section . . . 2225 of title 28' if 'the interests of justice so require.'" United States v. King, 4 F. Supp. 3d 114, 125 (D.D.C. 2013) (quoting 18 U.S.C. § 3006A(a)(2)).

> To determine whether appointing counsel is in the interests of justice, a court must consider 1) the [defendant's] likelihood of success on the merits, 2) the ability of the [defendant] to articulate his claims *pro se* in light of the complexity of the legal issues involved, and 3) the factual complexity of the case and whether the [defendant] has the ability to investigate undeveloped facts.

United States v. Washington, 782 F. Supp. 2d 1, 3 (D.D.C. 2011).

### III.     ANALYSIS

**A.     28 U.S.C. § 2255 Motion**

An ineffective assistance of counsel claim can be brought under § 2255, pursuant to the Sixth Amendment of the United States Constitution, which guarantees a "right to counsel . . . to protect the fundamental right to a fair trial." Strickland v. Washington, 466 U.S. 668, 684 (1984). If the reviewing court finds that the Sixth Amendment ineffective assistance of counsel claim brought under § 2255 has merit, it "shall vacate and set the judgment aside[,] and [it] shall [also] discharge the prisoner[,] resentence him[,] grant a new trial[,] or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

"To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance [by his counsel] and prejudice to him [because of counsel's deficient

performance]." United States v. Williams, 488 F.3d 1004, 1010 (D.C. Cir. 2007) (emphasis added) (citing Strickland, 466 U.S. at 687). An attorney's performance will be found to be deficient only when the attorney "made errors so serious that [he or she] was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687; see also United States v. Abney, 812 F.3d 1079, 1086 (D.C. Cir. 2016) ("Counsel's performance is 'deficient' when his representation falls below an objective standard of reasonableness." (citing United States v. Rodriguez, 676 F.3d 183, 189 (D.C. Cir. 2012))). In other words, an attorney must provide "reasonably effective assistance," Strickland, 466 U.S. at 687, measured by "prevailing professional norms," id. at 688; see also Massaro v. United States, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective [assistance of] counsel must show that counsel's actions were not supported by a reasonable strategy."). When evaluating an ineffective assistance of counsel claim, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Prejudice occurs only if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. To satisfy the high standard for prejudice, the defendant must show that the prejudice was so serious that it deprived him of a fair proceeding. See id. at 687; see also United States v. Gooch, 842 F.3d 1274, 1279–80 (finding that strong evidence influenced the jury more than fleeting testimony, and thus, there was no prejudice). "The probability of a different result must be 'substantial, not just conceivable.'" United States v. Aguiar, 894 F.3d 351, 363 (D.C. Cir. 2018) (Griffith, J., dissenting in part) (quoting Harrington v. Richter, 562 U.S. 86, 112 (2011)).

5

In determining whether allegedly ineffective counsel prejudiced the outcome of the proceedings, a court

> must consider the totality of the evidence [that was] before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court . . . must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695–96. The defendant bears the heavy burden of demonstrating, not just alleging, that the defense counsel's errors prejudiced the outcome of the proceedings. See id. at 697.

"The Court need not address both the deficient performance and prejudice prongs [of the ineffective assistance of counsel standard], as 'there is no reason for a court deciding an ineffective assistance [of counsel] claim to approach the inquiry in the same order or even address both components of the inquiry if the defendant makes an insufficient showing on one.'" United States v. Sutton, 803 F. Supp. 2d 1, 5 n.5 (D.D.C. 2011) (Walton, J.) (quoting Strickland, 466 U.S. at 697). Further, a court

> need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

Strickland, 466 U.S. at 697.

Here, as grounds for his claim that he was provided ineffective assistance by his trial attorney, the defendant contends that his attorney erred by "fail[ing] to challenge the Court's ruling allowing . . . Davis and Robinson . . . to testify as witnesses against the [d]efendant." Def.'s § 2255 Mot., Ex. A (Def.'s Mem.) at 2. However, the Court concludes that this omission did not constitute deficient representation. The defendant does not identify—and the Court is unaware of—a legal basis for trial counsel to have properly challenged the testimony of the defendant's co-conspirators, Davis and Robinson, and therefore, "[c]ounsel's failure to raise a meritless evidentiary objection was not deficient performance." United States v. Sitzmann, 893 F.3d 811, 833 (D.C. Cir. 2018), cert. denied, 140 S.Ct. 1551 (2020). Accordingly, the Court finds that this argument is without merit.

The defendant also claims that his trial counsel committed "plain error" when he failed to represent the defendant "at the offices of the U.S. Attorney in late December of 2012." Def.'s Mot., Ex. A (Def.'s Mem.) at 4.³ However, this claim is baseless because trial counsel was not the defendant's attorney in December 2012, as he was first appointed to represent the defendant in February 2013. Therefore, the Court concludes that, contrary to the defendant's position, counsel's failure "to support [the defendant's] appearance . . . at the offices of the U.S. Attorney in late December of 2012" could not have been deficient and therefore did not "contribute[] to a . . . guilty" verdict. Id., Ex. A (Def.'s Mem.) at 4.

---

³ In support of his argument, the defendant cites pages 1337 and 1338 of the trial transcript, at which point during the trial, the Court sustained defense counsel's objection to the introduction of evidence that during an event prior to the start of the trial, government counsel "ask[ed] [the defendant] to [ ] get an attorney[,]" Trial Tr. 1337:12, despite noting that "any fact that he talked to [Ms. Cheatham, the Assistant United States Attorney who prosecuted the defendant's case,] without a lawyer may suggest that he felt he didn't have anything to hide," id. 1338:4–6. To the extent that the defendant is claiming that trial counsel erred when he objected to the introduction of this evidence, the Court concludes that counsel's performance in this respect was not deficient because, as the Court concluded, the testimony was not relevant and the objection was therefore well-founded.

7

The defendant further contends that trial "[c]ounsel made no effort to discuss the risks of opting for a jury trial as opposed to negotiating a plea bargaining agreement" and that "[c]ounsel's failure to inform [the] [d]efendant of these [risks] is plain error." Def.'s Mot., Ex. A (Def.'s Mem.) at 4. However, trial counsel represents that he "discussed with [the defendant] the risks associated with a jury trial" and "promptly advised [the defendant] of all government plea offers," Gov't Opp'n, Ex. A (Declaration of Edward C. Sussman, Esq. ("Sussman Decl.")) at 2, and that the defendant "reject[ed] both pre-indictment and post-indictment plea offers" and "made it clear to [defense counsel] that [the defendant] would not accept any plea offer and maintained his innocence," id., Ex. A (Sussman Decl.) at 2. In any event, even in the absence of trial counsel's representations, "trial counsel's failure to pursue a plea bargain that he had no reason to think [would be accepted by the defendant] cannot be considered unreasonable" and "does not constitute deficient performance in accordance with the [Strickland] standard." United States v. Wilson, Criminal Action No. 96-318-02 (CKK), 2005 WL 8149006, at *10 (D.D.C. Aug. 30, 2005). Moreover, even if trial counsel had failed to pursue a plea offer on the defendant's behalf, and that failure was deficient, it did not prejudice the outcome of the proceedings because the defendant admits that he would not have accepted a plea even if his trial counsel had apprised him of the risks of a jury trial. See Def.'s Reply at 4.

The defendant also argues that trial counsel did not "thoroughly test[]" the government's witness, Pauline Pilate, during cross-examination. Def.'s Mot., Ex. A (Def.'s Mem.) at 4. The defendant represents that Pilate "took part in a year 2004 closing as the alleged buyer" of a property located at 317 R Street Northwest in the District of Columbia (the "R Street property"), but when "[t]he [R Street] property was sold in 2008[,] [ ] all of the net proceeds of the sale [went] to Davis or one of his legal entities," which the defendant argues "indicate[s] that Pilate

8

was not the real [b]uyer" when the R Street property was purchased in 2004. Id., Ex. A (Def.'s Mem.) at 4. The defendant claims that "[i]f [Pilate] had made this fact known at the time of the closing[,] th[e]n the party receiving the net proceeds would have been included in the HUD-1," and "[t]o do so at a much later time puts her clearly at fault." Id., Ex. A (Def.'s Mem.) at 4. According to the defendant, "[a]ll of th[is] [information] should have been elicited by [his] [trial] [c]ounsel, . . . and [that the failure to do so] is clearly 'plain error' that contributed to the adverse decision against the [d]efendant." Id., Ex. A (Def.'s Mem.) at 4. However, these issues were, in fact, raised during the trial. On direct examination, Pilate testified that she owned the R Street property and that the defendant prepared a HUD-1 when the property was sold for approximately $271,000 in 2008. See Trial Tr. 291:16–17, 292:9–10, 293:24–294:4. Pilate also testified that although she signed the HUD-1 representing that the amount of "cash to seller" was $271,917.23, she did not receive $271,917.23 from the sale of the R Street property, see id. 293:16–23, and that after she informed the defendant that "the HUD-1 that [she] had did not accurately reflect that [she] did not receive the funds from this [sale]" and that she "needed a new form," the defendant sent her "the form with the correction that [she] did not receive the money," id. 295:2–19. On cross-examination, Pilate reaffirmed that she sold the R Street property for approximately $271,000, but did not receive any money in return, although she was listed on the HUD-1 as the owner and the seller of the property, see id. 311:20–312:6, and that after she "had a conversation with [the] [defendant] about getting an amended HUD-1," "he sent [her] an amended HUD-1," id. 314:17–19. According to Pilate, she was "advised that [she] owed money to the [Internal Revenue Service]" because of the sale of the R Street property, id. 294:14–24, but that she did not know why she still owed taxes on the amount she allegedly received from the sale of the property "if the HUD-1 was changed," id. 318:11–14. In light of all

9

this evidence having been presented to the jury, the defendant has failed to offer any explanation as to why his trial counsel's performance was deficient, but rather merely asserts in a conclusory nature that his trial counsel's alleged failure to attempt to show that Pilate was not the owner of the R Street property in 2008 was "clearly 'plain error' that contributed to the adverse decision against the [d]efendant." Def.'s Mot., Ex. A (Def.'s Mem.) at 4. But the record defies his position and the Court therefore concludes that this ineffective assistance of counsel claim is also without merit.

As to the defendant's remaining claims that his trial counsel was ineffective when he (1) "failed to inform the Court during [a] pre[-]trial bench conference of all of the matters and facts leading up to and concerning the [d]efendant's prior felony conviction," id., Ex. A (Def.'s Mem.) at 1; (2) "introduced evidence of [the defendant's] prior conviction [in] [the] direct examination [of the defendant]," id., Ex. A (Def.'s Mem.) at 3; and (3) did "not [ ] have [ ] any knowledge or awareness of . . . Ohler v. United States," id., Ex. A (Def.'s Mem.) at 3 (citing Ohler v. United States, 529 U.S. 753, 760 (2000)), the Court concludes that these claims fail as well.[4] Assuming without deciding that the defendant can show that his counsel's performance was deficient in regards to these three arguments, the defendant has nevertheless failed to demonstrate that he was prejudiced by his counsel's purported errors. The evidence presented at trial, such as falsified HUD-1 documents, see, e.g., Trial Tr. 324:23–325:25, 339:4–340:7; copies of checks that were used at the closings of the properties that were the subject of this case, see id. at 221:11–222:6; the defendant's knowledge of the process used to close the real estate

---

[4] The defendant also argues that his appellate counsel's performance was a "[p]lain and an [e]gregious [e]rror . . . [to] not [ ] have had any knowledge or awareness of . . . Ohler." Def.'s Mot., Ex. A (Def.'s Mem.) at 3. However, the defendant's claim is conclusory in nature, and, even if the defendant's claim were true, the defendant fails to allege how appellate counsel's lack of knowledge regarding Ohler was deficient or how it prejudiced the outcome of the proceedings. Therefore, the Court concludes that the defendant's ineffective assistance of appellate counsel claim has no merit.

transactions for Davis, see id. 616:5–621:17, 780:3–784:6, 1240:17–1241:25; the defendant's knowledge of the straw buyers, see id. 778:7–780:3, 783:13–784:6; and the defendant's signature on documents with false information, see, e.g., id. 563:11–23, all overwhelmingly supported the jury's finding that the defendant was guilty. And, looking at the "totality of the evidence," the defendant has failed to overcome his burden to demonstrate that the outcome of the proceedings would have been different but for his counsel's alleged errors. Strickland, 466 U.S. at 695. Therefore, the Court concludes that none of these claims warrant granting relief to the defendant.[5]

In sum, the defendant has not demonstrated that his trial counsel's performance was deficient, but even if the Court could find that such a showing has been made, he nonetheless has failed to establish that the outcome of his trial was prejudiced by any of counsel's alleged deficiencies. The Court must therefore deny the defendant's § 2255 motion.[6]

---

[5] The defendant also argues that "[m]any of the [g]rounds taken in combination with others would also constitute and lead to a decision of reversible error." Def.'s Mot., Ex. A (Def.'s Mem.) at 5. However, because the Court finds that none of the defendant's claims individually were deficient or prejudiced the outcome of the proceedings, the defendant's cumulative effect argument must also fail. See United States v. Suggs, 146 F. Supp. 3d 151, 168 (D.D.C. 2015) (concluding that the defendant's cumulative error theory must fail because the defendant's individual claims are without merit). The Court so concludes because, even considering the defendant's claims cumulatively, the defendant has failed to demonstrate that he was prejudiced in light of the strength of the government's evidence presented during the trial.

[6] Under § 2255, a district court must grant an evidentiary hearing to conduct additional fact-finding necessary to resolve the motion unless "a § 2255 motion involves ineffective assistance of counsel." United States v. Weaver, 234 F.3d 42, 46 (D.C. Cir. 2000). In such cases, "a hearing is not required if the district court determines that the 'alleged deficiencies of counsel did not prejudice the defendant.'" Id. (citing United States v. Sayan, 968 F.2d 55, 66 (D.C. Cir. 1992)). Further, "[e]ven if the files and records of the case do not clearly rebut the allegations of the prisoner, no hearing is required where [the prisoner's] claims are 'vague, conclusory, or palpably incredible.'" United States v. Pollard, 959 F.2d 1011, 1031 (D.C. Cir. 1992) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). In making this assessment, the Court must construe the defendant's pro se filings liberally. Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 583 (D.C. Cir. 2002) (citing Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999)). Despite this deference, the Court concludes that it need not hold an evidentiary hearing to evaluate the defendant's ineffective assistance of counsel claims because, as discussed above, either the defendant's allegations are conclusory or the "alleged deficiencies of counsel did not prejudice the defendant." United States v. Weaver, 234 F.3d 42, 46 (D.C. Cir. 2000) (quoting United States v. Sayan, 968 F.2d 55, 66 (D.C. Cir. 1992)).

### B.     Motion to Appoint Counsel

As noted previously, "when determining whether appointment of counsel is in the interest of justice, courts consider the likelihood of the petitioner's success on the merits, the petitioner's ability to articulate his claims pro se, and the factual complexity of the claims and the petitioner's ability to investigate undeveloped facts." United States v. Valdez, 199 F. Supp. 3d 13, 21 (D.D.C. 2016) (citing King, 4 F. Supp. 3d at 125).

Here, the defendant has not demonstrated that the Court should appoint him counsel in this § 2255 proceeding.

> The Court has rejected each of [the defendant's] claims, so he has not demonstrated likelihood of success on the merits. As for his pro se status, the Court has had little trouble discerning the crux of his claims. And while [the defendant's] incarceration certainly limits his ability to investigate undeveloped facts, his claims primarily present legal conclusions and are easily disposed of, and he has not alleged any facts that require further investigation.

Valdez, 199 F. Supp. 3d at 21. Because the defendant has not shown that success on the merits is likely, that he was unable to articulate his claims pro se, or that the claims were too factually complex for the defendant to investigate undeveloped facts, the Court concludes that "appointment of counsel at this stage [in the proceeding] would not serve the interests of justice," id., and therefore denies the defendant's motion for the appointment of counsel.

### IV.     CONCLUSION

For the foregoing reasons, the Court concludes that the defendant has failed to demonstrate either that his trial counsel's performance was deficient or that he was prejudiced because of his counsel's alleged deficiencies. Accordingly, the Court will deny the defendant's § 2255 motion, his motion to appoint counsel, and his first, second, and third set of requests.

**SO ORDERED** this 10th day of August, 2020.[7]

REGGIE B. WALTON
United States District Judge

---

[7] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.